UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELIZABETH SLIGER, CAROL
DION and SCOTT AVILA,
individually, on behalf
of others similarly situated,
and on behalf of the general
public,

        Plaintiffs,

  v.

PROSPECT MORTGAGE, LLC, and
DOES 1 through 50, inclusive,

        Defendants.

NO. CIV. S-11-465 LKK/EFB

O R D E R

This is a wage and hour class and collective action filed by loan officers formerly working for Prospect Mortgage, LLC. Plaintiffs make eight claims for relief: 1) failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA"); 2) failure to pay minimum wage in violation of the FLSA; 3) failure to pay overtime in violation of California law; 4) failure to pay minimum wage in violation of California law; 5) waiting time penalties under California law; 6) failure to provide itemized wage

1

statements in violation of California law; 7) failure to provide and/or authorize meal and rest periods under California law; and 8) violation of California unfair competition law. Defendant Prospect Mortgage has filed a motion to dismiss the first amended complaint, or in the alternative to strike class allegations. Plaintiffs oppose the motion. For the reasons stated below, defendant's motion is DENIED.

## I. Background[1]

Plaintiffs Elizabeth Sliger, Carol Dion, and Scott Avila ("Sliger," "Dion," and "Avila," respectively) worked as loan officers between 2008 and 2010. As loan officers, plaintiffs were engaged in selling mortgages. Plaintiffs "regularly" performed this work over the phone, via the internet, or at defendant's offices. Plaintiffs did not make sales at customers homes or places of business. FAC ¶ 29.

Defendant had a uniform policy of paying plaintiffs and other loan officers on a commission-only basis. FAC ¶ 38. During pay periods in which a loan officer did not complete any mortgage sales, that loan officer received no pay. For example, plaintiff Sliger began working for defendant in May 2008, and did not receive any pay from defendant until approximately June or July 2008. FAC ¶ 18. Plaintiff Dion did not receive any pay for the first six or eight weeks of her employment, starting in May 2008. FAC ¶ 19.

---

[1] The "background" is taken from the allegations in the First Amended Complaint ("FAC"), ECF No. 25, unless otherwise specified. The allegations are taken as true for purposes of this motion only.

2

Plaintiff Avila worked from March 2009 until June 2009 without receiving any pay. FAC ¶ 20. The commission-only pay structure was uniformly applied to all loan officers. FAC ¶ 21. Plaintiffs allege that other loan officers from time to time did not receive any pay during pay periods in which they did not complete any mortgage sales.

In addition to working some pay periods without pay, plaintiffs sometimes worked more than eight hours per day or forty hours per week without receiving overtime pay. Sliger, Dion, and Avila typically began their work day in the "early morning," five days per week, and continued to work into the evening and also on weekends. Plaintiff Sliger, for example, "often worked from 8:00 until 5:00 two days a week and 8:00 to 6:00 three days a week, plus additional time at home in the evenings" and additional hours on weekends. FAC ¶ 23. Dion "often" worked eleven hours per day, six days per week. FAC ¶ 24. Avila "often" worked in the evenings and on weekends, in addition to eight hours per day worked in the office. FAC ¶ 25.

Defendant expected plaintiffs and other loan officers to respond to phone calls and emails in the evenings and weekends. Defendant had a policy of requiring loan officers to respond to leads within two hours of receiving them, even when the leads came in outside of the regular working hours. Plaintiffs observed other loan officers working in excess of eight hours per day and forty hours per week. Defendant had production requirements that applied to plaintiffs and other loan officers, which required loan officers

3

to work through lunch and rest periods. FAC ¶ 30.

Defendant uniformly represented to plaintiffs and other loan officers that they were exempt employees, and were not entitled to overtime pay. FAC ¶ 27.

Defendant did not keep records of hours worked by plaintiffs. Nor did they require plaintiffs to keep records of their own hours worked. FAC ¶ 32.

## II. Standards

**A. Standard for a Motion to Dismiss**

A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Id. at 1949-50. Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these

4

allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89 (2007).

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**B. Standard for a Motion to Strike**

Rule 12(f) authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter." A party may bring on a motion to strike within 21 days after the filing of the pleading under attack. The court, however, may make appropriate orders to strike under the rule at any time on its own initiative. Thus, the court may consider and grant an untimely motion to strike where it seems proper to do so. See 5A Wright and Miller, Federal Practice and Procedure: Civil 2d 1380.

A matter is immaterial if it "has no essential or important

5

relationship to the claim for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* by 510 U.S. 517 (1994). A matter is impertinent if it consists of statements that do not pertain to and are not necessary to the issues in question. Id. Redundant matter is defined as allegations that "constitute a needless repetition of other averments or are foreign to the issue." Thornton v. Solutionone Cleaning Concepts, Inc., No. 06-1455, 2007 WL 210586 (E.D. Cal. Jan. 26, 2007), citing Wilkerson v. Butler, 229 F.R.D. 166, 170 (E.D. Cal. 2005).

Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. See 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d 1380; see also Hanna v. Lane, 610 F. Supp. 32, 34 (N.D. Ill. 1985). However, granting a motion to strike may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues. Fantasy, 984 F.2d at 1527-28.

If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits. See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970 (9th Cir. 2010); see also 5A Wright & Miller, supra, at 1380. Whittlestone emphasized the distinction between Rule 12(f) and Rule 12(b)(6) and held that Rule 12(f) does

not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law. Id. at 976.

> "Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading . . . we would be creating redundancies within the Federal Rules of Civil Procedure." Whittlestone, Inc. v. Handi-Craft Co., See also Yamamoto v. Omiya, 564 F.2d 1319, 1327 (9th Cir. 1977) ("Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint." (Citation omitted)). Id. at 974.

Whittlestone reasoned that Rule 12(f) motions are reviewed for abuse of discretion, whereas 12(b)(6) motions are reviewed de novo. Id. Thus, if a party seeks dismissal of a pleading under Rule 12(f), the district court's action would be subject to a different standard of review than if the district court had adjudicated the same substantive action under Rule 12(b)(6). Id.

### III. Analysis

In its motion to dismiss, defendant argues: (1) that dismissal of the first amended complaint is appropriate because the class allegations fail to meet the minimum pleading standards under Fed. R. Civ. P. 8(a); (2) that the class definition should be dismissed or stricken as overbroad; (3) that the derivative class claims should be dismissed; (4) that plaintiff's allegations proposing a three-year statute of limitations must be dismissed; (5) and that plaintiff's prayer for attorneys' fees must be dismissed.

**A. Plaintiff's class allegations are sufficiently pled**.

Defendant argues that plaintiffs' class allegations fail to meet the pleading requirements of Fed. R. Civ. P. 8(a) because

7

1  plaintiffs rely exclusively on a theory that defendant uniformly
2  treated loan officers as exempt from state and federal overtime pay
3  requirements. According to the defendant, a "uniform exemption
4  theory" is insufficient to state a class action claim.
5       In individual wage and hour cases, exemption from the FLSA is
6  an affirmative defense that must be pled and proven by the
7  defendant. "[T]he application of an exemption under the Fair Labor
8  Standards Act is a matter of affirmative defense on which the
9  employer has the burden of proof." Corning Glass Works v. Brennan,
10 417 U.S. 188, 197 (1974); Alex v. California, 1992 U.S. Dist. LEXIS
11 6795 (E.D. Cal. 1992)("Defendant [in FLSA suit] bears the burden to
12 show that its employees are exempt from the FLSA's overtime
13 provisions, and exemptions are narrowly construed against the
14 employer. . ." (citing Corning, supra)). Affirmative defenses must
15 be stated in a responsive pleading, Fed. R. Civ. P. 8(c)1, but need
16 not be anticipated and pled in the complaint. Pa. State Police v.
17 Suders, 542 U.S. 129, 152 (2004). The defendant in this case does
18 not argue that plaintiffs' individual allegations fail to state a
19 claim. See, e.g. Def.'s Reply Brief ("Reply") 4:9-10, ECF No. 49.
20      Instead, defendant argues that "Plaintiffs must specifically
21 allege uniform policies or practices that applied to putative class
22 members on a class-wide basis," in order to survive a 12(b)(6)
23 motion to dismiss under the Twombly standard. Defendant argues that
24 "Plaintiffs have not alleged any such policy or practice supporting
25 their misclassification theory," Reply 1, and that plaintiff must
26 plead facts beyond a bare allegation that defendant had a uniform

8

policy of treating employees as exempt. Defendant cites <u>Vinole v. Countrywide Home Loans, Inc.</u>, 571 F.3d 935, 942 (9th Cir. 2009) for the proposition that district courts may use discretion to control the class certification process, including deciding "whether or not discovery will be permitted."

In <u>Vinole</u> the Ninth Circuit affirmed the district court's decision to grant a motion to deny class certification before plaintiffs had themselves moved for certification. The court, however, distinguished instances where district courts declined to dismiss class allegations "when the defendant had not yet answered the complaint, discovery had not yet commenced, and no motion to certify a class had been filed." <u>Id.</u> at 941 (discussing <u>In re Wal-Mart Stores, Inc. Wage and Hour Litigation</u>, 505 F. Supp. 2d 609 (N.D. Cal. 2007); and <u>Baas v. Dollar Tree Stores, Inc.</u>, 2007 U.S. Dist. LEXIS 65979, (N.D. Cal. 2007) (unpublished)).

Defendant's suggestion that this court dismiss the class certification claims is premised on <u>Vinole</u>. But defendant simply fails to recognize that <u>Vinole</u> stands for the proposition that dismissal of the claims is committed to this court's sound discretion. <u>Vinole</u>, 571 F.3d at 935, (citing *inter alia* <u>Kamm v. Cal.City Dev. Co.</u> 509 F.2d 205, 209 (9th Cir. 1975)). Moreover, this case is wholly distinguishable from <u>Vinole</u>. Fist, here the motion is premised on Fed. R. Civ. P. 12(b)(6), while in <u>Vinole</u> the court emphasized that the motion was brought pursuant to Rule 23. Moreover, the <u>Vinole</u> court indicated that there had been enough time for the plaintiff to discover information sufficient to meet

9

1  defendant's motion. Here, of course, we are at the pleading stage.
2       In order to win class certification, plaintiff will have to
3  show that "questions of law or fact common to class members
4  predominate over any questions affecting only individual members,
5  and that a class action is superior to other available methods for
6  fairly and efficiently adjudicating the controversy." Fed. R. Civ.
7  P. 23(b)(3). Defendant argues that plaintiff has failed to allege
8  facts that would support such predominance because plaintiff is
9  relying solely on allegations of a uniform policy of exempting loan
10 officers from overtime pay. Vinole held that a district court
11 determining whether to certify a class in a wage and hour case
12 "abuses its discretion in relying on an internal uniform exemption
13 policy to the near exclusion of other factors relevant to the
14 predominance inquiry." Vinole, 571 F.3d at 946. In order to comply
15 with Rule 23, a district court would need to assess the
16 relationship between the common and the individual claims. Id. In
17 addition to a uniform exemption policy, factors that weigh in favor
18 of certification include "whether the employer exercised some level
19 of centralized control in the form of standardized hierarchy,
20 standardized corporate policies and procedures governing employees,
21 uniform training programs, and other factors susceptible to common
22 proof." Id.
23      It is important to note that Vinole dealt with employees
24 described by the court as "focused on outside sales." Id. at 937.
25 This group is distinguished from employees known as "Internal Loan
26 Consultants who perform inside loan origination work..." Id. at 938

1 n.1. Clearly those facts are different from the allegations in the
2 instant case, which asserts that the plaintiff class worked mostly
3 inside, although they also were required to respond when they were
4 at home.
5      At this stage of litigation, plaintiff must only allege facts
6 from which the court can plausibly infer a right to relief.
7 Based on the  allegations  in the FAC, the court can plausibly make
8 the following inferences: Defendant had a policy of paying loan
9 officers on a commission-only basis. FAC ¶ 17, 21. This pay
10 structure resulted in loan officers receiving no pay during periods
11 where they did not complete any mortgage sales. Some loan officers
12 employed by defendant went without pay for eight weeks while doing
13 work for defendant. FAC ¶ 18-21. Defendant had a policy of
14 requiring loan officers to respond to leads within two hours, even
15 when those leads came outside of the loan officers' normal working
16 hours. Loan officers sometimes worked more than eight hours per day
17 or forty hours per week. Defendant treated loan officers as exempt
18 employees. FAC ¶ 27. Loan officers working for defendant did not
19 customarily and regularly make sales at their customers' home or
20 place of business, but instead conducted their work over the phone,
21 via the internet, and at defendant's office. Loan officers were not
22 paid overtime for hours worked in excess of eight per day or forty
23 per week. FAC ¶ 33. Defendants had production requirements and
24 monthly production goals, which applied to loan officers. These
25 requirements caused loan officers to miss meal and rest periods. In
26 sum, the FAC goes beyond just alleging a uniform exemption policy

by the defendant.

To put it directly, in exercising its discretion, it is this court's view that the procedure urged by the defendant threatens a determination on the merits. When the time comes for opposing class certification, the defendant may argue that issues specific to individual claims cut against plaintiff's predominance argument, but that time is not now. Defendant's motion to dismiss the class allegations is DENIED.

**B. The class definition is not too broad to survive a motion to dismiss or strike.**

Defendant asserts that a class consisting of "all persons who are, have been, or will be employed by Defendants as 'loan officers,' 'loan originators,' and individuals with similar job titles within the United States," is overly broad. Defendant argues that the "FAC is completely devoid of a theory that is common to plaintiffs and the broad class of 'loan officers,' 'loan originators,' and 'similar job titles.'" Mot. Summ. J. 13:21-14:1. In this section of the motion, defendant again raises issues about whether plaintiff's allegations plausibly state a claim. The plaintiff has pled that "loan officers," "loan originators," and "individuals with similar job titles," are similarly situated, FAC ¶ 37. The court finds this to be plausible.

Defendant also seeks to have all references to "loan originators," and "similar job titles" stricken from the complaint. Plaintiffs state that they included alternative job titles in order to capture all employees in the same position as loan officers,

whatever their job title. Inclusion of those alternate job titles, is not "redundant, immaterial, impertinent, or scandalous," in light of plaintiff's explanation that the job titles are meant to refer to defendant's employees who are engaged in mortgage loan sales and are employed in a manner similar to plaintiffs.

Accordingly, the court DENIES defendant's motion to dismiss or to strike the class definition, or to strike all references to "loan originators" or "other similar job titles" from the FAC.

**C. Plaintiffs' derivative class claims are not dismissed**

Defendant argues that plaintiffs' claims for unpaid minimum wages, meal, and rest period violations, waiting time penalties, itemized statement penalties, and unfair business practices should all be dismissed because they are derivative of the class and collective claims based on misclassification. Indeed, if the court ultimately finds that plaintiffs are exempt employees, the derivative claims will fail. Having found, however, that plaintiffs have sufficiently pled their class and collective action claims, the court DENIES defendant's motion to dismiss the derivative claims.

**D. Plaintiffs have sufficiently pled willfulness.**

Plaintiffs have alleged that defendant's conduct was willful, and they seek a class that includes all similarly situated employees at any time three years prior to the filing of the complaint. Under the FLSA, the statute of limitations is two years, unless an employer's conduct is willful, in which case it is extended to three years. 29 U.S.C. § 255(a). An employer's

13

violation is "willful" when the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). In general, "conditions of the mind" may be alleged generally. Fed. R. Civ. P. 9(b).

Here, plaintiffs have alleged that defendant's violations were willful, and that defendant "was aware of wage and hour laws, as evidenced by the fact that they provide overtime compensation to other employees who are not loan officers." FAC ¶ 35. Further, plaintiffs alleged that defendant knew that the work performed by plaintiffs required minimum wage and overtime pay, that defendant instructed them to work long hours without proper pay, that employees complained to defendants about these practices. FAC ¶ 41.

These factual allegations allow the court to plausibly infer that plaintiffs are entitled to an extension of the FLSA statute of limitations to three years. Accordingly, defendant's motion to dismiss the allegations proposing a three year collective action is DENIED.

**E. Plaintiffs claim for attorneys' fees is not dismissed**

Plaintiffs have made a claim for attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5. Under that provision,

> a court may award attorneys' fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement. . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be

14

1  paid out of the recovery, if any.
2 Cal. Code Civ. P. § 1021.5.[2]

3  The purpose of this fee-shifting provision is "to encourage 4 suits enforcing important public policies by providing 5 substantial attorney fees to successful litigants in such 6 cases." Flannery v. California Highway Patrol, 61 Cal. App. 4th 7 629, 634 (1998)(citing Maria P. v. Riles, 43 Cal. 3d 1281 (Cal. 8 1987)). However, fees are not necessarily appropriate "in every 9 lawsuit enforcing a constitutional or statutory right." Id. In 10 Kistler v. Redwoods Community College Dist., 15 Cal. App. 4th 11 1326 (1993), a California Appellate court reversed an award of 12 attorneys' fees under § 1021.5, because plaintiffs "were not 13 disinterested citizens seeking to establish new law on a 14 question of public importance, they were simply seeking the 15 wages due to them." Id. at 1337.

16  Plaintiffs argue that they are entitled to such fees and 17 costs because defendant's conduct threatens or harms 18 competition, and because plaintiffs seek an injunction requiring 19 defendants to pay required wages to all California loan officers 20 employed by defendant. Plaintiffs distinguish the individual 21 wage and hour suits in which California courts have declined to 22 award fees under § 1021.5 from the instant class action, in 23 which plaintiffs are seeking restitution and injunctive relief

---

[2] Although plaintiffs also state a claim for attorneys' fees under Cal. Lab. Code § 1194, defendants state that plaintiff's attorneys' fees claim is based "solely" on § 1021.5, and only address that provision.

15

for employees other than themselves. State courts have held that wage and hour class actions result in "significant public benefit," entitling successful plaintiffs to attorneys' fees under § 1021.5.[3] For example, in Grodensky v. Artichoke Joe's Casino, 171 Cal. App. 4th 1399, 1438 (2009), the court held that because the employer's pay practices (tip sharing with managers) "is commonplace in the gaming industry, . . .the ramifications of the plaintiffs' adjudication in their favor may have a domino effect upon other dealers at other card rooms." Additionally, the permanent injunction issued by the court would benefit future employees. The potential domino effect, and the benefit to future employees were factors supporting "a finding that the action resulted in the enforcement of an important right affecting the public interest." Id.[4]

The court finds this reasoning to be both compelling and applicable here. Plaintiffs seek a permanent injunction that will benefit all future loan officers employed by defendant. If successful, plaintiffs' suit will have resulted in a significant benefit on a large class of people. Accordingly, the court

---

[3] District courts are not bound by decisions of state intermediate courts, Dimidowich v. Bell & Howell, 803 F.2d 1473 (9th Cir. 1986), but they are not free to disregard them in the absence of other authority. West v. American Tel. & Tel. Co., 311 U.S. 223 (1940).

[4] The California Supreme Court later held that the California Labor Code provision that the Grodensky court found to have been violated, § 351, does not contain a private right to sue, but the Court did not address the court's analysis of § 1021.5. Lu v. Hawaiian Gardens Casino, Inc., 50 Cal. 4th 592, 596 (Cal. 2010).

16

1  DENIES defendant's motion to dismiss plaintiff's prayer for
2  attorneys' fees.

### IV. Conclusion

For the foregoing reasons, the court ORDERS that defendant's Motion to Dismiss the Complaint, or in the Alternative, to Strike Class Allegations, ECF No. 40, is DENIED in its entirety.

IT IS SO ORDERED.

DATED: May 26, 2011.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

17