UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELIZABETH SLIGER, CAROL
DION and SCOTT AVILA,
individually, on behalf
of others similarly situated,
and on behalf of the general
public,

        NO. CIV. S-11-465 LKK/EFB

    Plaintiffs,

  v.

PROSPECT MORTGAGE, LLC, and       O R D E R
DOES 1 through 50, inclusive,

    Defendants.
_____/

    Plaintiffs bring a wage and hour action arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and under California labor laws. Plaintiffs move to conditionally certify a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), for an order compelling defendant to produce the contact information for the potential class members, and for an order authorizing notice to the potential class members. Defendant opposes collective certification. For the reasons stated below,

1

the motion is GRANTED in part and DENIED in part.

**BACKGROUND**

Named plaintiffs Carol Dion ("Dion") and Scott Avila ("Avila")[1] worked for defendant Prospect Mortgage, LLC, as "loan officers" between 2008 and 2009. First Amended Complaint ("FAC"), Dkt. No. 25, ¶ 6 & 7; Avila Decl. ¶ 2; Dion Decl. ¶ 2.[2] They allege the following in support of their claim that their "primary" job duties were to sell mortgage loans.[3] They "almost always" made their sales "in person, over the phone, or over the Internet at Prospect's branch office" or in their own homes.[4] They did not "regularly" make sales "at the customer's home or place of business."[5]

Both named plaintiffs were paid "on a commission only basis."[6] They were not paid overtime when they worked over 40

---

[1] It appears that one of the original named plaintiffs, Elizabeth Sliger, will withdraw from the lawsuit. Dkt. No. 58-1 (Plaintiff's "Memorandum of Points and Authorities in Support of Motion for Conditional Certification and Judicial Notice") at p.5 n.1.

[2] The Avila Declaration is pp. 2-3 of Exhibit B (Dkt. No. 58-4) of the June 1, 2011 Declaration of Robert L. Schug ("Shug Decl.") (Dkt. No. 58-2). The Dion Declaration is pp. 6-7 of the Schug Declaration.

[3] FAC ¶ 29; Avila Decl. ¶ 3; Dion Decl. ¶ 3.

[4] Avila Decl. ¶ 4; Dion Decl. ¶ 4.

[5] Avila Decl. ¶ 4; Dion Decl. ¶ 4; FAC ¶ 29.

[6] FAC ¶ 17; Avila Decl. ¶ 6; Dion Decl. ¶ 6. Plaintiffs have submitted the declarations of several opt-in plaintiffs. Two of them, Easley and Petschl, indicate that while they were paid on a commission basis, they were not paid on a commission only basis. As to Easley and Petschl, defendant "provided a recoverable draw"

2

1  hours in a week.[7]  Indeed, they assert that defendant had a
2  uniform policy of paying its loan officers on a commission basis,
3  and not paying overtime for work beyond the 40 hour weekly
4  limit.[8]  During pay periods in which a loan officer completed few
5  or no mortgage sales, that loan officer received pay below the
6  minimum wage,[9] or no pay at all.[10]   Plaintiff Dion did not
7  receive any pay for the first six or eight weeks of her
8  employment, starting in May 2008.[11]  Plaintiff Avila worked from
9  March 2009 until June 2009 without receiving any pay.[12]  The
10 complaint alleges that the commission-only pay structure was
11 uniformly applied to all loan officers, including the named
12 plaintiffs, although as noted, plaintiffs' declarations show that
13 the policy did not apply to two of the opt-in plaintiffs, Easley
14 and Petschl.

15     In addition to working some pay periods without pay, both
16 named plaintiffs sometimes worked more than eight hours per day

---

against their commissions.

[7] Avila Decl. ¶ 6; Dion Decl. ¶ 6; FAC ¶ 38.

[8] FAC ¶ 38.

[9] By referring here to the minimum wage, the court does not intend to pre-judge whether any plaintiff is exempt or non-exempt.

[10] FAC ¶ 17; Avila ¶ 6; Dion ¶ 6.  Neither Easley or Petschl asserts that they were ever paid below minimum wage or not paid at all when they failed to make sales.  As noted above, they do not assert that they were paid on a "commission-only" basis.

[11] FAC ¶ 19.

[12] FAC ¶ 20.

3

or forty hours per week without receiving overtime pay.[13]  Dion and Avila typically began their work day in the "early morning," five days per week, and continued to work into the evening and also on weekends.[14]  Dion "often" worked eleven hours per day, six days per week.[15]  Avila "often" worked in the evenings and on weekends, in addition to eight hours per day worked in the office.[16]  Prospect Mortgage expected plaintiffs and other loan officers to respond to phone calls and emails in the evenings and weekends.[17]  Defendant had a policy of requiring loan officers to respond to leads within two hours of receiving them, even when the leads came in outside of the regular working hours.[18]  Plaintiffs observed other loan officers working in excess of eight hours per day and forty hours per week.[19]  Defendant had production requirements that applied to plaintiffs and other loan officers, which required loan officers to work through lunch and rest periods.[20]  Defendant uniformly represented to plaintiffs and other loan officers that they were exempt employees, and were

---

[13] FAC ¶ 22; Avila ¶ 6; Dion ¶ 6.
[14] FAC ¶ 22.
[15] FAC ¶ 24.
[16] FAC ¶ 25.
[17] FAC ¶ 25.
[18] FAC ¶ 25.
[19] FAC ¶ 26.
[20] FAC ¶ 30.

4

...

not entitled to overtime pay.[21]  Defendant did not keep records of hours worked by plaintiffs.[22]  Nor did they require plaintiffs to keep records of their own hours worked.[23]

## ANALYSIS

"The FLSA imposes minimum labor standards on employers to promote the 'health, efficiency, and general well-being of workers." Christopher v. Smithkline Beecham Corp., 635 F.3d 383, 389 (9th Cir. 2011). As one means of achieving these goals, the FLSA imposes on employers the requirement to pay a minimum wage to its employees. 29 U.S.C. § 206(a)(1). They must also pay overtime – that is, a pay rate "not less than one and one-half times the regular" pay rate – to employees who work in excess of forty hours per week. 29 U.S.C. § 207(a)(1). In general, however "an employee employed in a bona fide executive, administrative, or professional capacity ..., or in the capacity of outside salesman" is exempt from both requirements. 29 U.S.C. § 213(a)(1); Christopher, 935 F.3d at 689.

**I.   CERTIFICATION STANDARD**

Plaintiffs allege in their complaint that defendant improperly classified them as exempt under the FLSA, and therefore improperly failed to pay them minimum wage and

---

[21] FAC ¶ 27.

[22] FAC ¶ 32.

[23] FAC ¶ 32.

5

overtime.[24]  Their complaint is filed on behalf of themselves "and other persons similarly situated."  Section 16(b) of the FLSA authorizes employees to bring an action for violations of the minimum wage and overtime provisions of the Act, "for and in behalf of ... themselves and other employees similarly situated." 29 U.S.C. § 216(b).

The FLSA does not define "similarly situated," and the Supreme Court and the Ninth Circuit still have not interpreted the term.  However, the Ninth Circuit has confirmed that a "collective action" under Section 16(b) differs from the Rule 23 "class action."  McElmurry v. U.S. Bank Nat. Ass'n, 495 F.3d 1136, 1139 (9th Cir. 2007) ("A 'collective action' differs from a class action"); accord, Wang v. Chinese Daily News, Inc., 623 F.3d 743, 761 (9th Cir. 2010) ("[t]he clear weight of authority holds that Rule 23 procedures are inappropriate for the prosecution of class actions under § 216(b)"); Smith v. T-Mobile USA Inc., 570 F.3d 1119, 1122 (9th Cir. 2009) (relying upon the "structural distinctions between a FLSA collective action and a Rule 23 class action" in deciding that an appeal by FLSA named plaintiffs was moot).  Accordingly, rather than using the approaches derived from Rule 23 class action cases, this court will use the "two-tiered" approach previously taken by this and other district courts in the Ninth Circuit.  See Kress v. PricewaterhouseCoopers, LLP, 263 F.R.D. 623, 627 (E.D. Cal.

---

[24] FAC ¶¶ 27, 29 & 39.

6

2009).[25]

Under the two tiered approach, the first tier is the "notice stage," which asks whether the employees are sufficiently similarly situated that a "conditional certification" should be granted, and notice should be sent to prospective plaintiffs under <u>Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 169, 172 (1989).[26]  <u>Kress</u>, 263 F.R.D. at 626.[27]  The proceedings now

---

[25] Defendant invites this court to use the Rule 23 analysis set forth in <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. ___, 131 S. Ct. 2541 (2011), as a guide, arguing that the commonality standard of Rule 23 and the "similarly situated" standard of Section 16(b) are "entirely consistent," and citing <u>Burns v. Village of Wauconda</u>, 1999 WL 529574 (N.D. Ill. July 15, 1999) (unpublished) (declining to apply either the two-tier standard or the Rule 23 standard because the plaintiffs plainly could not satisfy either standard) and <u>MacGregor v. Farmers Ins. Exchange</u>, 2011 U.S. Dist. LEXIS 80361 (D.S.C. July 22, 2011) (the facts, construed in the light most favorable to plaintiffs, demonstrated only "isolated supervisor misconduct," and thus the case was inappropriate even for conditional certification).  This court declines the invitation as it appears inconsistent with the Ninth Circuit's apparent view that the Rule 23 standards should not be used.

[26] <u>Hoffmann-La Roche</u> concerned a collective action brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.  However, the ADEA explicitly incorporates the collective action procedures of the FLSA. 29 U.S.C. § 626(b). The Supreme Court's interpretation of these procedures in Hoffmann-La Roche therefore applies to FLSA cases. <u>Advanced Textile Corp.</u>, 214 F.3d at 1064.

[27] Certification at the initial stage is conditional in that it may be revisited at the second tier. <u>Kress</u>, 263 F.R.D. at 628, <u>citing</u> <u>Wynn v. NBC</u>, 234 F. Supp.2d 1067, 1082 (C.D. Cal. 2002). The second tier may be reached "at the conclusion of discovery (often prompted by a motion to decertify)." <u>Id.</u> at 628, <u>quoting</u> <u>Thiessen v. GE Capital Corp.</u>, 267 F.3d 1095, 1102-03 (10th Cir. 2001).  At that point, the court considers factors such as "'(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations.'" <u>Kress</u>, 263 F.R.D. at 628.

are at the first tier.[28]  Plaintiffs can meet their burden at this stage by providing "substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." Kress, 263 F.R.D. at 627, quoting Gerlach v. Wells Fargo & Co., No. 05-0585, 2006 U.S. Dist. LEXIS 24823, *6-7, 2006 WL 824652, *2-3 (N.D. Cal. Mar. 28, 2006) (internal quotation marks omitted).  This is a "fairly lenient standard" that does not require the court to consider contrary evidence provided by defendant.  Id., citing Lewis v. Wells Fargo & Co., 2009 U.S. Dist. LEXIS 102773 at *9, 2009 WL 3517660 at *3-4 (N.D.Cal. Oct. 26, 2009), and Wynn v. NBC, 234 F. Supp.2d 1067, 1082 (C.D. Cal. 2002).

**II.  CONDITIONAL CERTIFICATION**

Plaintiffs have met their burden in this case in regard to the commission-only plaintiffs.  The plaintiffs have submitted sworn declarations showing that the named plaintiffs and the opt-in plaintiffs share similar job duties:  they sell mortgage loans; work with customers to complete the mortgage process; collect standard information; submit the loan for approval; and obtain information needed to close the loan.[29]  See  Declarations

---

[28] Plaintiffs filed this motion for conditional certification one month after defendant's motion to dismiss the First Amended Complaint was denied.

[29] The First Amended Complaint relies principally on plaintiffs' formal designation as "loan officers" to say that they are similarly situated.  This would not be enough to meet their burden at this stage.  In a "mis-classification" case such as this

8

of Avila, Dare, Dion, Easley Guy, Helin, Petschl, Schenkler, Schneider, Wilds and Woodburn (Odish), Exh. B. to the Motion for Conditional Certification.[30]  The declarations also show that the named plaintiffs and the opt-in plaintiffs are not paid overtime even when they work in excess of 40 hours in a week and that they have witnessed other employees in their offices – prospective class members – who "performed the same job duties" as they do.  The declarations also show that named plaintiffs and opt-in plaintiffs – other than Easley and Petschl – are paid on a commission-only basis and have gone without pay when they have made no sales.  No more is required of plaintiffs to show that the named plaintiffs and opt-in plaintiffs – other than Easley and Petschl – are "similarly situated" at this stage of the proceedings.

Defendant opposes the request for conditional certification principally by arguing that its evidence shows that plaintiffs are exempt employees – either under the "outside" sales exemption, or the "administrative" exemption.  The documents and declarations submitted by defendant are beside the point at this stage of the proceeding.  Defendant will have an opportunity to demonstrate the merits of its affirmative defenses at the second tier stage of this proceeding.  At this stage, however, the court

---

one, plaintiffs must provide allegations or evidence "indicating that prospective class members share similar job duties." Kress, at 629-30.  They have done so with the declarations.

[30] Dkt. No. 58-4.

9

is focused only on whether the named plaintiffs and the opt-in plaintiffs are "similarly situated."

Defendant goes on to argue that the plaintiffs' declarations should be "disregarded" as "unreliable" because they are "boilerplate, lack foundation, and offer an identical set of conclusory and speculative statements about proposed members of the FLSA Collective." Defendant's assertion that the submitted declarations are "boilerplate" and contain "identical" statements completely misses the thrust of plaintiffs' motion.[31] Plaintiffs assert that their jobs were identical in the material respects covered by the declarations. Accordingly, since these are declarations, not literary works of art, there is no reason why

---

[31] The claim that the declarations "lack foundation" is without merit. Defendant has submitted a document called "Objections to Evidence" (Dkt. No. 65-1), asserting that the declarations by the named plaintiffs "are not based on personal knowledge and lacks foundation," under Fed. R. Evid. 602 ("Lack of Personal Knowledge") and 901 ("Requirement of Authentication or Identification"). In fact, the declarations set forth plaintiffs' and opt-in plaintiffs' own experience and eyewitness accounts: who the plaintiffs are, where they work, what they do at work, how they were paid and what they observed co-workers doing at work. Defendant apparently objects to the declarants' statements that they "believe" that their co-workers did the same job the plaintiffs did, based upon what they saw. Defendant points out that plaintiffs did not observe their co-workers when they were <u>not</u> at work. The objections miss the point. The declarations don't purport to say what the co-workers did outside the office. The import of the objected-to portion of the declarations is that plaintiffs saw their co-workers doing the same job they (the plaintiffs) were doing. The plaintiffs' use of the word "believe" has no relevance here. In that regard, they only report what the declarants saw with their own eyes. If what plaintiffs saw with their own eyes gave them an incorrect view of what their co-workers were doing over-all, then defendant can bring that up on a motion to de-certify the class. Defendant's "Objections" are overruled.

their declarations should vary in those material aspects.[32]

Defendant further opposes by providing declarations of employees who say they were outside loan officers.  That misses the point.  Plaintiffs' class is of persons who were non-exempt loan officers, who were denied the minimum wage or overtime for their hours in excess of 40 hours per week.  Plaintiffs do not claim that every single employee with the title "loan officer" is non-exempt.  They do request that those who are non-exempt (that is, who are subject to the wage and hour requirements), and who have been denied overtime pay or the minimum wage should be notified that they can opt-in to this lawsuit.[33]

As to Easley and Petschl, however, their declarations show that they are not paid on a commission-only basis.[34]  They also

---

[32] In any event, two of the declarations do differ in important aspects. Neither Easly nor Petschl claim that they were paid on a "commission-only" basis (although they say were paid commissions), that they were ever paid less than the minimum wage or that they ever worked from home.  These are likely to be important differences at the second stage of these proceedings, since the FLSA claims are for wage and hour violations against non-exempt employees (those not fitting the "outside" sales exemption).

[33] Defendant also claims that the administrative exemption applies.  This argument fails for the same reason, namely, defendant relies exclusively on its own evidence, but does not address plaintiffs' evidence.  Plaintiffs' evidence is the focus on this tier of the analysis.  Litigation over the applicability of defendant's affirmative defenses, such as exemptions, is for the second tier stage of this litigation.

[34] Defendant's view is that Easley and Petschl are hourly paid workers who are not exempt from the overtime requirements, and that any claim that they were not paid overtime is not a mis-classification issue.  It is not necessary for the court to determine whether it should consider this representation in making its decision, because the Easley and Petschl declarations, standing alone, are sufficient to show that they should not be included in

11

do not assert that they ever went without pay or were paid less than minimum wage.  These are important distinctions in a wage and hour case.[35]  Accordingly, the motion will be denied as to Easley and Petschl, and other employees who were <u>not</u> paid on a commission-only basis.[36]

## III. NOTICE[37]

Plaintiffs request an order compelling defendant:

> to provide Plaintiffs' counsel with a list of all loan officers (in Excel or similar format) who are, or were, employed by Prospect Mortgage at any time during the three years preceding the Court's Order.  This list should include each class member's (1) name, (2) job title, (3) last known address and telephone number, (4) last known personal email address, (5) dates of employment, (6) location of employment, (7) employee number, and (8) social security number (last four

---

the conditional certification.

[35] Plaintiffs' Second and Fourth Claims for Relief allege a failure to pay minimum wages under federal and state law.  It appears that a "sub-class" would be inappropriate here because the named plaintiffs both have minimum wage claims and work on a commission-only basis.

[36] There is no "prejudice" in this determination; it is not intended to prevent Easley and Petschl from filing their own lawsuit if they wish.

[37] To facilitate the opt-in process, "a district court may authorize the named plaintiffs in a FLSA collective action to send notice to all potential plaintiffs, and may set a deadline for plaintiffs to join the suit by filing consents to sue."  <u>Does I thru XXIII v. Advanced Textile Corp.</u>, 214 F.3d 1058, 1064 (9th Cir. 2000).

12

1        digits only)."
2   Plaintiffs also request "a 90-day notice period with a reminder
3   notice after 45 days, with notice to be distributed by
4   Plaintiffs' counsel via U.S. Mail and email."  At oral argument,
5   defendant suggested that the parties meet and confer to work out
6   a stipulation on the notice issue, and plaintiff agreed to do so.
7   **IV.   SUMMARY**
8        For the reasons stated above, plaintiffs' motion for
9   conditional certification (Dkt. No. 58) is GRANTED in part and
10  DENIED in part, as follows:
11       1.   The court CONDITIONALLY CERTIFIES a collective action
12            under 29 U.S.C. § 216(b), consisting of all persons who
13            are, or were, employed by Defendant Prospect Mortgage,
14            LLC, as a loan officer at any time from three years
15            prior to October 18, 2007, and continuing to the
16            present, and who were paid on a commission-only basis.
17       2.   The parties are GRANTED forty-five (45) days from the
18            date of this order to submit a joint proposal for
19            notice to the class, or separate statements as to why
20            no such joint proposal could be reached.
21       IT IS SO ORDERED.
22       DATED:  August 23, 2011.

                                  _____
                                  LAWRENCE K. KARLTON
                                  SENIOR JUDGE
                                  UNITED STATES DISTRICT COURT